IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RICHARD ANTHONY STEWART, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-23-1766 |
| TRUIST FINANCIAL, | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

This is Richard Anthony Stewart's second attempt to remand this case to state court, and this time, he is successful.

On May 24, 2023, Stewart sued Truist Financial ("Truist") in the Circuit Court for Charles County, Maryland over a dispute about a debt for vehicle financing. ECF 4. Stewart alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), and several provisions of the Uniform Commercial Code. *Id.* Truist timely removed the case to this Court on the basis of federal question jurisdiction, ECF 1, and Stewart promptly moved to remand the case to state court on the ground that the Court did not have subject matter jurisdiction, ECF 10. The Court found it did have subject matter jurisdiction because Stewart alleged federal questions. ECF 20. The Court denied the motion to remand and granted Stewart leave to file an amended complaint that removed the federal question allegations. *Id.* Stewart promptly filed an amended complaint, ECF 21, and moved again to remand the case to state court, ECF 26. He contends, once again, that the Court lacks subject matter jurisdiction over his amended complaint. *Id.* Truist opposed the motion to remand, ECF 25, and Stewart replied, ECF 28. Truist requested leave to file a surreply, ECF 29, and Stewart submitted

a response, ECF 30. Truist also moved to dismiss the amended complaint for failure to state a claim. ECF 25. That motion, too, is fully briefed. ECF 25-1, 26, 27. No hearing is necessary. *See* Loc. R. 105.6.

For the following reasons, the motion to remand is granted, and the motion to dismiss is denied as moot. This case is remanded to the Circuit Court for Charles County, Maryland.

**I.      Background**

On this motion to remand, the Court considers the allegations in the amended complaint and the facts in the record.

On May 19, 2021, Maryland resident Richard Anthony Stewart purchased a vehicle on financing from Infiniti of Silver Spring. ECF 25-3. The dealership assigned Stewart's liability to SunTrust Bank, now Truist Bank, an institution whose principal office is identified in its articles of incorporation as located in North Carolina.[1] It also possesses some branches in Maryland. ECF 1, at 4; ECF 30-1, at 2. Stewart received $47,866.70 in financing and granted a security interest in the vehicle to Truist. ECF 25-3.

On June 6, 2022, Stewart sent what he called a "remittance coupon" to Truist in order to "set off an obligation" on his account and discharge what he believed to be an outstanding balance of $43,176. ECF 21, at 6; *see also* ECF 26-1, at 2. On June 25, 2022, Stewart received correspondence from Truist dated June 17, 2022, which said that his account was past due. ECF 21, at 4. Stewart then sent several communications to the CEO of Truist, William H. Rogers, Jr., disputing his account balance and asserting that he no longer owed Truist a debt because it did not

---

[1] Courts may take judicial notice of "matters of public record and other information that, under Federal Rule of Evidence 201, constitute[s] [an] 'adjudicative fact[].'" *Goldfarb v. Mayor of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). Articles of incorporation are a matter of public record. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 178 n.2 (4th Cir. 2009).

respond to his initial letter. *Id.* at 5–6. On January 17, 2023, Truist alerted Stewart that it had repossessed the vehicle and intended to sell it at a public auction to offset the amount that he owed. ECF 25-6, at 2. Truist communicated that his total outstanding balance was $46,020.14. *Id.*

In Stewart's amended complaint, he claims that Truist violated the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201 *et seq.* ("MCDCA") and several provisions of the Maryland Uniform Commercial Code. *See* ECF 21, at 2–3. Additionally, Stewart alleges that Truist proceeded with collection activities "in violation of Federal law." *Id.* at 12. Stewart also cites the Federal Trade Commission's Holder-In-Due-Course Rule, 16 C.F.R. § 433. *Id.* at 4. Stewart is seeking "summary judgment" in an amount "[e]qual but not limited to" $43,176 and an "attorney fee" for the time it took him to work on the case, which he valued at approximately $20,000. *Id.* at 13.

## II.     Standard of Review

A defendant may remove a civil action filed in state court to federal district court so long as the district court has original jurisdiction over the action. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing 28 U.S.C. § 1441). A federal court has original jurisdiction over federal question and diversity of citizenship cases.

A court has federal question jurisdiction over claims "arising under the Constitution, laws, or treaties of the United States." *Id.* (citing 28 U.S.C. § 1331). A case may be removed under 28 U.S.C. § 1331 if the face of the complaint raises a federal question. *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005). To remove a case based on a federal question, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Id.* (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)).

A court has diversity jurisdiction when the parties are completely diverse citizens and the amount in controversy is greater than $75,000. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (citing 28 U.S.C. § 1332(a)). "Ordinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith." *Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1016–17 (4th Cir. 1981). If a plaintiff alleges a specific amount in damages less than $75,000, the defendant must prove to a "legal certainty" that the plaintiff "would actually recover more than that" amount in order to defend removal. *See Momin v. Maggiemoo's Int'l., L.L.C.*, 205 F. Supp. 2d 506, 509 (D. Md. 2002).

The defendant bears the burden of proving an action is removable. *Mulcahey*, 29 F.3d at 151; *Lontz*, 413 F.3d at 439. Because removal raises "[s]ignificant federalism concerns," the Court must remand the case where "federal jurisdiction is doubtful." *Mulcahey*, 29 F.3d at 151; *see Common Cause v. Lewis*, 956 F.3d 246, 252 (4th Cir. 2020). "On a motion to remand, 'federal courts consider the facts disclosed on the record as a whole.'" *Medish v. Johns Hopkins Health Sys. Corp.*, 272 F. Supp. 3d 719, 721 n.1 (D. Md. 2017) (quoting *Capitol Cake Co. v. Lloyd's Underwriters*, 453 F. Supp. 1156, 1160 n.5 (D. Md. 1978)).

**III.   Discussion**

This Court does not have original jurisdiction over Stewart's amended complaint. The pleading does not raise a federal question. And even though Stewart and Truist are diverse citizens, Stewart has alleged less than $75,000 in damages and Truist has not proven to a legal certainty that Stewart actually would recover more than $75,000. So Truist has not established that the Court has original jurisdiction over the amended complaint. Remand is required.

### A. Federal Question Jurisdiction

In his amended complaint, Stewart claims that Truist violated the MCDCA and several sections of the Maryland Uniform Commercial Code. Federal rights are not essential elements of these state law claims.

Stewart's amended complaint makes passing reference to federal law. Still, he does not allege a federal question.

First, Stewart alleges that Truist "failed to respond and illegally continues to proceed with collection activities in violation of Federal Law." ECF 21, at 12. In Truist's view, this reference to "collection activities in violation of Federal Law," *id.*, should be read as alleging a violation of the FDCPA, which Stewart had explicitly done in his original complaint. ECF 4. But Stewart dropped any reference to the FDCPA (and other federal statutes) in his amended complaint, and his amended complaint "supersedes the original one and . . . renders the original complaint 'of no effect.'" *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) (citing *Young v. City of Mt. Ranier*, 238 F.3d 567, 573 (4th Cir. 2001)). Stewart's vague, passing reference to a "violation of Federal law" does not constitute a claim under a federal statute or otherwise give rise to federal question jurisdiction.

Second, Stewart refers to a June 28, 2022 letter he sent Truist's CEO, in which Stewart claimed that Truist violated the FDCPA. Again, Stewart does not claim in his amended complaint that Truist violated the FDCPA. This letter is one of many between him and Truist that Stewart offered to provide context for the dispute. A mere reference to the FDCPA in a letter Stewart wrote Truist in 2022 does not, without more, give rise to federal question jurisdiction.

Finally, Stewart refers to the Holder-In-Due-Course Rule, 16 C.F.R. § 433. This regulation requires that every consumer credit contract contain the language: "any holder of this consumer

credit contract is subject to all claims and defenses which the debtor could assert against the seller of the goods or services." *Empire Funding Corp. v. Armor*, 232 F.3d 887 (Table), 2000 WL 1568201, at *1–2 (4th Cir. 2000) (citing 16 C.F.R. § 433.2). Stewart does not allege Truist violated this rule, and even if he did, nothing in the text of this rule purports to create a cause of action.

Because Stewart's amended complaint does not raise a federal question, the Court does not have federal question jurisdiction over it.

### B. Diversity Jurisdiction

The Court also does not have diversity jurisdiction. Although the parties are diverse, Truist has not carried its burden of establishing that the amount in controversy exceeds $75,000.

#### 1. Diversity of Citizenship

The parties are completely diverse. Stewart lives in Waldorf, Maryland, so he is a citizen of Maryland. Stewart argues Truist is also a citizen of Maryland because it has a main branch in Frederick, Maryland. Stewart is incorrect.

As a national banking institution, Truist is a citizen of the state where it is "located." *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 361 n. 14 (4th Cir. 2020) (citing 28 U.S.C. § 1348). Banks are "located" in the state where they designated their "main office" in their articles of incorporation. *Id.* (quoting *Wachovia Bank v. Schmidt*, 541 U.S. 303, 318 (2006)). The Court takes judicial notice that Truist lists its main office in North Carolina in its articles of incorporation. So Truist is a citizen of North Carolina. The parties are diverse.

#### 2. Amount in Controversy

The remaining question is whether the amount in controversy exceeds $75,000. Generally, "the sum quoted by the plaintiff" in good faith controls the amount in controversy. *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab*

*Co.*, 303 U.S. 283, 288–89 (1938)). Here, Stewart requests $43,176 and an estimated $20,000 in attorney's fees. ECF 21, at 13.[2] Because Stewart's specific damages demand is less than $75,000, Truist bears the burden of proving that it is a "legal certainty" that the amount in controversy is greater than $75,000. *See Momin*, 205 F. Supp. 2d at 509; *see also Delph v. Allstate Home Mortg. Inc.*, 478 F. Supp. 2d 852, 853 (D. Md. 2007). Truist has not carried that heavy burden.

First, Truist suggests that the amount in controversy could in fact be upwards of $517,000. To support this, it says that Stewart sent the bank a letter dated July 12, 2022, claiming that Truist owed him $1,000 per day as a service fee starting from the "date of first correspondence." ECF 21, at 5. Truist interprets the "date of first correspondence" as the date of its default notice on June 17, 2022, and thus calculates the damages between this date and the date Stewart filed the amended complaint, November 16, 2023, as $517,000 ($1,000 x 517 days). However, Stewart does not actually request these damages. The amount he requests is clear: $43,176 plus $20,000 in attorney's fees. *Id.* at 13. What's more, even Truist acknowledges that Stewart would not be entitled to $1,000 per day anyway; Truist reads Stewart's July 12 letter as advancing a claim under the FDCPA, for which the maximum he could recover is $1000 per violation, not per day. So by Truist's own account, there could not be more than another $1,000 at issue—not another $500,000. In sum, the fact that Stewart once claimed he was entitled to more money in no way proves to a

---

[2] Courts allow for attorney's fees to be included in the amount in controversy "(1) if the fees are provided for by contract; or (2) if a statute mandates or allows payment of attorney's fees." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013) (quoting *15–102 Moore's Fed. Prac., Civil* § 102.106(6)(a)). Violations of the MCDCA are subject to the fee-shifting provisions of the Maryland Consumer Protection Act ("MCPA") because a provision in the MCPA makes it an "unfair or deceptive trade practice" to engage in conduct that violates the MCDCA. *Andrews & Lawrence Pro. Serv., LLC v. Mills*, 223 A.3d 947, 962 (Md. 2020) (citing Md. Code Ann., Com. Law § 13-301(14)(iii)).

legal certainty that the amount in controversy now is hundreds of thousands of dollars more than the amount Stewart asked for in his amended complaint.

Second, Truist alternatively claims that the amount in controversy is at least $109,196.14: $43,176, $20,000 in attorney's fees, and a declaratory judgment discharging his outstanding debt, which Truist values at $46,020.14. The problem for Truist is simple: Stewart does not state he is seeking a declaratory judgment at any point in the amended complaint. What Stewart does state is the value of the relief he seeks: $43,176 (fees aside). To be sure, it is unclear whether Stewart is requesting $43,176 in damages or the discharge of that amount of debt. In correspondence with Truist, Stewart stated that he believed the balance on his account was $43,176—suggesting he takes the amount in controversy to be the value of his debt. But regardless of whether Stewart is seeking the discharge of his debt or damages, the amount that he puts at issue in the complaint is at most $63,176: $43,176 plus the estimated attorney's fees of $20,000. If anything, it appears to be a legal certainty that the amount in controversy is less than $63,176, because Maryland courts generally do not allow pro se plaintiffs to recover attorney's fees given that they are not incurring fees. *See Frison v. Mathis*, 981 A.2d 57, 63 (Md. App. Ct. 2009). Because Truist has not shown that the Court should read the complaint the way Truist suggests or that it is a legal certainty that Stewart is entitled to a declaratory judgment worth the value of his outstanding debt (above and beyond the $43,176 and $20,000 in fees he requests), Truist has not established that the amount in controversy is more than $75,000.

Third, Truist suggests that the amount in controversy exceeds $75,000 because Stewart seeks judgment "[e]qual but not limited to" $43,176 and $20,000 in fees. *See* ECF 21, at 13. Under this interpretation of the complaint, Stewart's damages request is a floor, not a ceiling. Courts in this district are divided on what effect, if any, language like "not limited to" has on the amount in

8

controversy in a dispute governed by Maryland law. In *Gallagher*, the plaintiff sought damages "in an amount in excess of Seventy-four Thousand Dollars ($74,000.00)." *Gallagher v. Fed. Signal Corp.*, 524 F. Supp. 2d 724, 725 (D. Md. 2007). The defendant argued that the ambiguity of the phrase "in excess of" required the court to conclude that the plaintiff was requesting damages above the statutory minimum. *Id.* The court struck the language "in excess of" and interpreted the complaint as seeking $74,000. *Id.* at 728. To arrive at this conclusion, the court referred to Maryland Rule of Civil Procedure 2-305, which stated that "a demand for a money judgment shall include the amount sought." *Id.* at 727 (quoting Md. R. Civ. P. 2-305). The court relied on a decision from the Maryland Appellate Court, *Hoang v. Hewitt Avenue Associates*, which interpreted the rule to mean that if a plaintiff specifies an amount in damages below $75,000 in their *ad damnum* clause, a court must strike any other words purporting to adjust that amount and defer to the number alleged. *Id.* at 727–28 (citing *Hoang v. Hewitt Ave. Assocs.*, 936 A.2d 915, 931 (Md. App. Ct. 2007)). Having concluded that the complaint included a claim for only $74,000, the *Gallagher* court then gave the parties an opportunity to comment before ruling on the motion to remand. *Id.* at 728.

By contrast, in *Brennan*, the plaintiff requested "money damages in an amount to be proved at trial, but not less than $70,000, plus court costs and attorney's fees." *Brennan v. Stevenson*, No. JKB-15-2931, 2015 WL 7454109, at *1 (D. Md. Nov. 24, 2015). The *Brennan* Court found that Maryland Rules of Civil Procedure had been adjusted since *Gallagher*, such that plaintiffs no longer had to give notice of the maximum sum they are seeking. *See id.* at *3. Accordingly, the Court in *Brennan* chose to see the plaintiff's use of the language "not less than" as setting a floor for damages. *Id.* at *3. Nevertheless, the *Brennan* Court decided that it was still the defendant's burden to prove that the amount in controversy exceeded $75,000. *See id.* at *3–4. The mere fact

9

that the plaintiff sought damages that were "not less than $70,000" did not automatically mean that the amount in controversy cleared the $75,000 bar. *Id.* at *4. The court granted the plaintiff's motion to remand because the defendants did not provide sufficient evidence to carry their burden of proving the case met the amount in controversy requirement. *Id.* at 6.

Under either *Gallagher*'s approach or *Brennan*'s approach, the Court cannot conclude that the amount in controversy here exceeds $75,000. Either the amount in controversy is exactly the amount Stewart requested at the end of his complaint, *see Gallagher*, 524 F. Supp. 2d at 727–28, or it is higher only if and to the extent that Truist proved that the amount in controversy exceeds $75,000, *see Brennan*, 2015 WL 7454109, at *4. Stewart specifically requested $43,176 and $20,000 in fees. Qualifying his requests as "not limited to" those amounts does mean the amount at issue exceeds the diversity threshold. And for the reasons the Court has already explained, Truist has not shown that the amount in controversy is over $75,000.

Perhaps aware that it cannot bear its burden, Truist tries to argue that it does not have to. Truist claims that Stewart bears the burden of proving that the amount in controversy is under $75,000. In support of that claim, Truist cites *Impact Office Products, LLC, v. Krug*, No. AW-10-1864, 2010 WL 4296344 (D. Md. 2010). Truist contends that *Impact Office Products* held that "for a court to deny diversity jurisdiction, it must 'appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" ECF 25, at 5 (quoting *Impact Office Prods.*, 2010 WL 4296344, at *1 (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 288–89)). However, *Impact Office Products* considered the amount in controversy issue in a different posture. That case involved a motion to dismiss after the plaintiff filed suit in federal court. *Impact Office Prods.*, 2010 WL 4296344, at *1. This case involves a motion to remand after the plaintiff filed suit in state court. The *Impact Office Products* Court explicitly distinguished between the standard on a

10

motion to remand and the standard on a motion to dismiss, pointing out that in removal cases, disputes over the amount in controversy are "governed by a stricter standard of review." *Id.* at *2. On that stricter standard, the defendant must prove to a "legal certainty" that the amount in controversy is greater than $75,000 because of the "federalism concerns" raised by renewal. *Id.* at *2 n.2 (citing *Vargo v. Del. Title Loans, Inc.*, No. L-10-1251, 2010 WL 2998788, at * 1 (D. Md. 2010)). Even setting that distinction aside, the *Impact Office Products* Court found that the burden was on the defendant to prove the amount in controversy, not the plaintiff. *See id.* at *2. So *Impact Office Products* is no help to Truist. *Delph* is more analogous. *See Delph*, 478 F. Supp. 2d at 852. There, as here, the court considered the amount in controversy on a motion to remand. *See id.* at 853. There, as here, the plaintiff alleged in their complaint that the amount in controversy was less than $75,000. *See id.* at 854. And there, as here, the plaintiff specified an amount for some damages and estimated others. *See id.* at 853. So there, as here, the defendant had the burden of proving to a legal certainty that the amount in controversy was greater than $75,000. *See id*. at 854. Truist fails to meet that burden in this case. It is far from a legal certainty that there is more than $75,000 at issue in this case over a roughly $45,000 loan.

*     *     *

Because Stewart has not presented a federal claim, the Court does not have federal question jurisdiction over this case. Because the amount in controversy is below $75,000, the Court does not have diversity jurisdiction either. In the absence of either form of jurisdiction, the Court must grant Stewart's motion to remand the case to state court. Because that precludes the Court from ruling on the motion to dismiss, the Court denies that motion as moot.

## IV. Conclusion

For the foregoing reasons, Stewart's motion to remand, ECF 26, is granted, and Truist's motion to dismiss, ECF 25, is denied as moot. A separate order follows.

Date: June 13, 2024

_____
Deborah L. Boardman
United States District Judge